UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

SHAWAN I. SPRAGANS,

    Plaintiff,

V.

MS. GRAY, *et al.*,

    Defendants.

Civil Action No. 7: 21-066-KKC

**MEMORANDUM OPINION
AND ORDER**

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Plaintiff Shawan I. Spragans is a federal inmate confined at the United States Penitentiary ("USP")-Hazelton in Bruceton Mills, West Virginia. Proceeding without an attorney, Spragans has filed a civil complaint against prison officials. [R. 1] By prior Order, the Court granted Spragans's motion to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. [R. 6][1] Thus, the Court must conduct a preliminary review of Spragans's complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A. A district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997).

The Court evaluates Spragans's complaint under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage, the Court accepts the plaintiff's factual allegations as true,

---

[1] Although the Court's Order granting Spragans permission to proceed *in forma pauperis* directed him to pay an initial partial filing fee of $35.50 to the Clerk of the Court within 28 days from the date of the Order, followed by payments according to a monthly payment schedule until the entire $350.00 filing fee is paid, Spragans has failed to make any payment to the Clerk of the Court. While Spragans's failure to comply with the Court's Order is, in itself, a sufficient reason to justify dismissal of this case for failure to prosecute and failure to comply with a Court Order, the Court declines to do so at this time.

and his legal claims are liberally construed in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Even so, a complaint must set forth claims in a clear and concise manner, and must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010). *See also* Fed. R. Civ. P. 8.

**I.**

Spragans's complaint is quite difficult to follow, as it mostly consists of conclusory statements, characterizations, or legal arguments rather than statements of fact or legal claims. Spragans was previously instructed that, if he wishes to pursue his claims for relief, he must file a complaint that "describe[s] the ***facts*** of his case, specifically identifying the people, dates, places, and actions which are relevant to his claims, and explain what he wants the Court to do." *See Spragans v. United States of America*, 7:21-cv-025-GFVT (E.D. Ky.) at R. 4 (Order of Dismissal) at p. 4. Rather than follow these instructions, Spragans's complaint fails to clearly articulate the factual basis for his claims. Moreover, the few facts that Spragans does allege are presented in a disorganized, disjointed manner, making it unduly difficult to figure out what, exactly, Spragans alleges to have occurred. In fact, most of the underlying allegations of fact supporting his claims do not appear in his complaint at all, but rather appear only in the administrative remedy grievances attached to his complaint, a pleading approach that fails to comply with both the Federal Rules of Civil Procedure as well as the instructions that were previously provided to Spragans regarding the proper way to plead his claims. [R. 1-1]

From what the Court is able to ascertain from its review of the complaint and Spragans's administrative grievances, on or around February 1, 2020, Spragans informed Correctional Officer Ms. Gray that he was having chest pains. [R. 1-1] He claims that Ms. Gray (who said she was

also a nurse) told him to put his hands on his head and walk around and she would call a doctor and the "L.T." to let them know. [*Id.*] An "L.T." showed up and asked to see his eyes, then told Spragans that he would be going to an outside hospital. Spragans was then escorted to the L.T. Office, where there was confusion between Lt. Moore and Ms. Gray regarding Spragans's identity. Spragans claims that he told them his correct name and Inmate Number, but that Lt. Moore had pulled up his cellmate's file. Lt. Moore called in Ms. Gray, who confirmed that Spragans was the person having chest pains, but she was not sure about his name because Spragans's and his cellmate's bed cards looked alike. Lt. Moore instructed Ms. Gray to go to the unit and get the bed book to confirm Spragans's identity. Ms. Gray returned with the bed book and Lt. Moore confirmed that Spragans had given the correct name. Ms. Gray again confirmed that Spragans was the inmate experiencing chest pains and said that she had just messed up on the name.

    Spragans was taken to the hospital and stayed overnight. After he was discharged the next day, he returned to his cell (escorted by Mr. Ninix and Mr. Howard). Spragans alleges that he entered his cell to get his I.D. for the Housing Unit Office and he was assaulted by his cellmate for an unknown reason. Ninix, Howard, and other officers broke up the incident and escorted Spragans to medical in the Special Housing Unit ("SHU"). While he was in the SHU, a C.O. joked to Spragans that he shouldn't have tried to use his cellmate's name. Spragans alleges that he later found out that his cellmate was told that he tried to use his name to leave the prison, which is why he was assaulted by his cellmate. [R. 1-1 at p. 1-2]

    In his complaint, Spragans alleges that "Ms. Gray was negligent and irresponsible when she failed to acquire or attain the correct identity of Mr. Spragans during his medical emergency and further complicated the situation by communicating an erroneous name and inmate ID number to her superior." [R. 1 at p. 2] Spragans then alleges that "Ms. Gray's back and forth

3

indecisiveness and interaction with Mr. Spragans cellmate created a dangerous environment when she went back to the housing unit from the LT's office and communicated to Mr. Spragans's cellmate that Mr. Spragans was attempting to escape using his cellmate ID number and name." [*Id*.] Spragans also claims that Ms. Gray's unidentified partner was also involved in "leaking" Spragans's information to his cellmate. [*Id*.]

In addition to his allegations against Ms. Gray and her unidentified partner, Spragans alleges that Lt. Moore "is in direct supervision of his staff and is responsible for contributing to his staff misconduct" and that he also should have been more discrete in trying to ascertain Spragans's identity. [*Id*.] He alleges that, in returning Spragans to his cell after he was discharged from the hospital, Ninix and Howard placed Spragans in a "dangerous" and "stressful" environment in light of the miscommunication between Ms. Gray and Spragans's cellmate. [*Id*. at p. 5-6] Spragans further alleges that Officers J. Ingle and W. Thomas "allowed Mr. Spragans to be assaulted" because they failed to control their housing unit and deescalate and diffuse the situation before Spragans was injured. [*Id*.]

Based on all of these allegations, Spragans claims that his "basic human rights" were violated "to be treat[ed] humanely" and that "[t]he Defendants violated Mr. Spragans's safety and put him in a dangerous environment." [*Id*. at p. 7] As relief, Spragans seeks monetary damages in the amount of "$5,000,000,00," for each Defendants' "negligent, irresponsible, perilous, and counterproductive involvement…in regards to Mr. Spragans's injuries, pain and suffering, cruel and unusual punishment." [*Id*. at p. 11-16] Spragans also seeks various forms of other relief, including officer training and the imposition of extended leaves of absences for the Defendants.

## II. A.

The Court has reviewed Spragans's complaint and concludes that it must be dismissed for multiple reasons. As an initial matter, as noted above, much of Spragans's complaint consists of vague, conclusory allegations, rather than allegations of fact supporting his claims for relief. However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. "Legal conclusions that are 'masquerading as factual allegations' will not suffice." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563–64 (6th Cir. 2011) (quoting *Terry v. Tyson Farms, Inc.,* 604 F.3d 272, 276 (6th Cir.2010) (other citations omitted)). Nor are vague allegations that one or more of the defendants acted wrongfully or violated the plaintiff's constitutional rights sufficient. *Laster v. Pramstaller*, No. 08-CV-10898, 2008 WL 1901250, at *2 (E.D. Mich. April 25, 2008).

Federal notice pleading requires, at a minimum, that the complaint advise each defendant of what he allegedly did or did not do that forms the basis of the plaintiff's claim against him. *Iqbal*, 556 U.S. at 678; *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008). Otherwise, it is unduly burdensome (if not impossible) for any particular Defendant to meaningfully respond to the claims asserted against them. "Even a pro se prisoner must link his allegations to material facts…and indicate what each defendant did to violate his rights…" *Sampson v. Garrett*, 917 F.3d 880, 882 (6th Cir. 2019) (citing *Hill*, 630 F.3d at 471; *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). The lack of factual detail supporting Spragans's claims for relief and the vague and conclusory nature of his allegations are sufficient reasons to dismiss his claims without prejudice for failure to adequately state a claim for relief. *See Iqbal*, 556 U.S. at 678; *Hill*, 630 F.3d at 470.

Nor does Spragans adequately allege the legal basis for his claims for relief, as Spragans does not specify any constitutional provision that he claims has been violated. Even if the Court liberally construed his complaint to allege a violation of the Eighth Amendment based on his references to "cruel and unusual punishment," his allegations, even if true, are insufficient to state a claim against any of the Defendants for a violation of the Eighth Amendment.

While the Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), the Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984) (other citations omitted). One of these duties is "to protect prisoners from violence at the hands of other prisoners." *Id*. at 833 (citation omitted).

"It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. Rather, a prison official violates the Eighth Amendment only when two requirements are met: (1) "the deprivation alleged must be, objectively, 'sufficiently serious,'" *id*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)) and (2) the prison official has a "sufficiently culpable state of mind," which is "one of 'deliberate indifference' to inmate health or safety." *Id*. (quoting *Wilson*, 501 U.S. at 297) (other citations omitted).

> With respect to the requisite state of mind, the Supreme Court has instructed that:
>
> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837 (citations omitted). Thus, to state a viable Eighth Amendment claim, an inmate must allege that a prison official: 1) was actually aware of facts giving rise to an inference of a substantial risk of serious harm; 2) actually drew that inference; and 3) consciously disregarded it. *Id*. at 837, 839. *See also Jones v. Muskegon Co.*, 625 F.3d 935, 941 (6th Cir. 2010).

Here, Spragans has failed to allege that any of the Defendants have acted with the requisite state of mind. First, Spragans's allegations are clear that he seeks to hold Lt. Moore responsible because he "is in direct supervision of his staff and is responsible for contributing to his staff misconduct." However, to the extent that Spragans seeks to impose liability on Lt. Moore (or any other Defendant, such as Ingle and/or Thomas, whom Spragans alleges were assigned to "control" his housing unit) based upon their status as supervisor, the mere fact of supervisory capacity is not enough: an official must be personally involved in the conduct complained of because *respondeat superior* is not an available theory of liability. *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981). *See also Iqbal*, 556 U.S. at 677 ("[i]n a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer.").

Nor are his allegations that Defendants (particularly Ms. Gray) were "negligent" and "irresponsible" sufficient to state a claim for an Eighth Amendment violation.[2] The subjective component of such a claim requires a showing that each Defendant was actually aware of

---

[2] Spragans was previously advised that, if he wished to pursue claims alleging negligence by a federal employee, he may only due so against the United States (and not the individual federal employees) pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2670 *et seq*. ("FTCA"). *Spragans v. USA*, 7:21-cv-025-GFVT (E.D.Ky.) at R. 4 (Order of Dismissal) p. 2-3. However, Spragans's complaint neither references the FTCA, nor does he name the United States as a Defendant. While the Court construes *pro se* pleadings with some leniency, "liberal construction does not require a court to conjure allegations on a litigant's behalf." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (quoting *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001)). Spragans's decision not to pursue an FTCA claim (despite being instructed on how to do so) does not give this Court license to create one on his behalf.

substantial risk of harm to Spragans yet, through his or her actions, chose to consciously and deliberately disregard that risk, a much more demanding standard than mere negligence. *Farmer*, 511 U.S. at 835; *Arnett v. Webster*, 658 F. 3d 742, 751 (7th Cir. 2011) ("Deliberate indifference 'is more than negligence and approaches intentional wrongdoing.'") (quoting *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1998)); *Johnson v. Karnes*, 398 F.3d 868, 875 (6th Cir. 2005) ("[T]he requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment.") (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

With respect to Ninix and Howard, Spragans alleges only that they escorted him back to his cell after he returned to U.S.P. Big Sandy after his night in the hospital. Likewise, Spragans alleges that, although Ingle and Thomas were assigned to "control" Spragans's housing unit, they "failed to de-escalate and diffuse the situation before the assault," which led to Spragans's injuries. [R. 1 at p. 6] Spragans also alleges that their "failure to act swiftly" led to the seriousness of his injuries. [*Id.*] However, Spragans makes no allegations of fact supporting a conclusion that either Ninix, Howard, Ingle, or Thomas were actually aware of any specific risk or threat to Spragans's safety that they knowingly disregarded.

On the whole, Spragans's complaint simply does not allege facts showing that any of the individual Defendants "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Johnson*, 398 F.3d at 874. For these reasons, his complaint fails to state a claim for an Eighth Amendment violation.

8

**B.**

In addition to his failure to state a claim for an Eighth Amendment violation, it is evident based upon Spragans's complaint and the documents that he has attached in support that he has not exhausted his administrative remedies with respect to his claims. Under the Prison Litigation Reform Act of 1995 ("PLRA"), a prisoner wishing to challenge the circumstances or conditions of his confinement must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); *Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 231 (6th Cir. 2006); *Campbell v. Barron*, 87 F. App'x 577, 577 (6th Cir. 2004). The "mandatory language [of the PLRA] means a court may not excuse a failure to exhaust." *Ross v. Blake*, 136 S. Ct. 1850, 1856-57 (2016). If the failure to exhaust administrative remedies is apparent from the face of the complaint, it is subject to dismissal upon initial screening. *Shah v. Quintana*, No. 17-5053, 2017 WL 7000265, at *1 (6th Cir. July 17, 2017); *Barnett v. Laurel Co., Ky.*, No. 16-5658, 2017 WL 3402075, at *1 (6th Cir. Jan. 30, 2017). *See also Jones*, 549 U.S. at 214-15 (district court may dismiss complaint *sua sponte* when it is apparent from the face of the complaint that claim is barred by affirmative defense).

The BOP's Inmate Grievance System requires a federal prisoner to first seek informal resolution of any issue with staff. 28 C.F.R. § 542.13. If a matter cannot be resolved informally, the prisoner must file an Administrative Remedy Request Form (BP-9 Form) with the Warden, who has 20 days to respond. *See* 28 C.F.R. §§ 542.14(a) and 542.18. If the prisoner is not satisfied with the Warden's response, he may use a BP-10 Form to appeal to the applicable Regional Director, who has 30 days to respond. *See* 28 C.F.R. §§ 542.15 and 542.18. If the prisoner is not satisfied with the Regional Director's response, he may use a BP-11 Form to appeal to the General

Counsel, who has 40 days to respond. *See* 28 C.F.R. §§ 542.15 and 542.18. *See also* BOP Program Statement 1330.18 (Jan. 6, 2014).

Here, Spragans attaches a copy of his attempt at informal resolution of his grievance that he submitted on or around February 3, 2020. [Record No. 1-1 at p. 1] He appealed the resolution of this grievance with the Warden in a BP-9 Form that was received on March 11, 2020. [R. 1 at p. 7; R. 1-1 at p. 3] The Warden responded to Spragans's grievance (which was assigned Case Number 1010042-F1) on March 26, 2020. [R. 1-1 at p. 5] In the Response, Spragans was advised that he may appeal the response to his grievance to the Regional Director within 20 days. [*Id.*]

However, Spragans waited until January 10, 2021 to file his appeal with the Regional Director. [R. 1 at p. 7; R. 1-1 at p. 4] While Spragans did not attach the Regional Director's response to his complaint filed in this case, he did attach it to the initial pleading that he filed in his first case seeking to bring his claims, *Spragans v. USA*, 7:21-cv-025-GFVT (E.D.Ky.) at R. 1-1, p. 2 (Regional Administrative Remedy Appeal Response).[3] The Regional Counsel issued a response to Spragans's appeal on February 22, 2021, and advised him that, if he was dissatisfied with this response, he may appeal to the General Counsel's Office within 30 days. *Id*.

In his complaint filed in this case, Spragans checks the form indicating that he filed an appeal with the General Counsel, but says the date of that appeal is "unknown." [R. 1] However, in his prior case, Spragans submitted a "Small Claims for Property Damage or Loss" Form that he completed on March 24, 2021, referencing the BP-8, BP-9, and BP-10 Forms that he had filed with respect to his claims and requesting $200,000.00 for damage or loss of privately owned property. *Spragans v. USA*, 7:21-cv-025-GFVT (E.D.Ky.) at R. 1-1, p. 1. To be sure, this is not

---

[3] The Court may take judicial notice of undisputed information contained on government websites, *Demis v. Sniezek*, 558 F. 3d 508, 513 n.2 (6th Cir. 2009), including "proceedings in other courts of record." *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969).

the BP-11 Form that is used to properly appeal an administrative grievance to the Office of General Counsel, nor does Spragans indicate that he filed this (albeit incorrect) form with the Office of General Counsel. Instead, six days later (on March 30, 2021), the Clerk of the Court received Spragans's initial pleading in his prior case, which was a "Motion to Enter New Evidence and Additional Argument," attaching this "Small Claims" Form (as well as Spragans's administrative grievance documents) and requesting that the Court "apply…additional evidence of argument to my current case number above," referencing "Case No: 1010042-F1." *Id*. at R. 1, p. 1.[4] Thus, it is apparent that, rather than file his appeal to the Office of General Counsel using the appropriate BP-11 Form, Spragans filed his "appeal" with this Court using the "Small Claims" Form.

In the Order of Dismissal entered in Spragans's prior case on April 15, 2021, the Court noted that Spragans "has no other civil case pending in this Court and the 'current case number' to which he refers (Case No: 1010042-F1) is the number assigned to Spragans's administrative remedy request filed with the Bureau of Prisons ("BOP")." *Id*. at R. 4, p. 1. While the Court dismissed Spragans's case without prejudice, it advised that, if Spragans wished to file a lawsuit with respect to his claims, he "must complete, in its entirety, the inmate grievance process and pursue all available appeals under the applicable grievance procedures." *Id*. at p. 5.

Spragans did not heed this advice and complete the administrative remedy process. Rather, he filed this second lawsuit. However, as Spragans was previously advised, the PLRA requires him to first exhaust all available administrative remedies prior to filing his lawsuit. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Mere

---

[4] The envelope containing Spragans's "Small Claims" Form was postmarked on March 26, 2021, which is two days after he completed the Form. *Spragans v. USA*, 7:21-cv-025-GFVT (E.D.Ky.) at R. 1-2.

attempts at exhaustion are not enough; instead, the PLRA requires "proper exhaustion of administrative remedies." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The Supreme Court has defined proper exhaustion as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

It is evident from Spragans' complaint and the documentation that he has submitted to the Court that he has not properly exhausted his claims. Where a plaintiff has filed a complaint prior to fully exhausting his available administrative remedies, a district court may properly dismiss the complaint without prejudice to afford the plaintiff the opportunity to properly invoke and follow the jail's grievance procedures with respect to his concerns. *Napier v. Laurel County*, 636 F.3d 218, 222 (6th Cir. 2011). Thus, in addition to his failure to state a claim for which relief may be granted, Spragans's complaint must also be dismissed for failure to exhaust his available administrative remedies prior to filing his lawsuit.

Accordingly, it is hereby **ORDERED** as follows:

1. Spragans's Complaint [R. 1] is **DISMISSED WITHOUT PREJUDICE**.
2. This action is **DISMISSED** and **STRICKEN** from the Court's docket.
3. A corresponding Judgment will be entered this date.

This 7th day of April, 2022.



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY